## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CIVIL ACTION NO:

SARABETH DEMARTINO,

              Plaintiff,

    v.                                                  JURY TRIAL DEMANDED

EMPIRE HOLDINGS AND
INVESTMENTS, LLC; and JUAN
CARLOS MARRERO,

              Defendants

_____/

### COMPLAINT

Plaintiff, SARABETH DEMARTINO ("DeMartino" or "Plaintiff"), brings this action and Complaint for damages and demand for jury trial against Defendants, EMPIRE HOLDINGS AND INVESTMENTS, LLC ("Empire") and JUAN CARLOS MARRERO ("Marrero") (collectively, "Defendants"), and states as follows:

### PRELIMINARY STATEMENT

1.     This action is about a dedicated and experienced manager in the fitness industry who was terminated by her employer when she was eight months pregnant.

2.     Plaintiff Sarabeth DeMartino worked for Town Sports International ("TSI") for approximately ten years and transitioned to work at Empire under the former CEO of TSI, Patrick Walsh, in 2021, as the General Manager of the Christie's Fitness location in Vero Beach, FL.

3.     In October 2021, Ms. DeMartino disclosed that she was pregnant.

4.     Following the disclosure, Ms. DeMartino's new supervisor, Juan Carlos Marrero, issued Ms. DeMartino her first performance write up in ten years, unfairly scrutinized her work and started looking for a replacement for Ms. DeMartino.

5.      On March 1, 2022, Ms. DeMartino was abruptly terminated from her position without any final warning.

6.      At the time of termination, Ms. DeMartino was eight months pregnant and only a few weeks before she was scheduled to take approved FMLA leave.

7.      Ms. DeMartino's termination is blatant violation of the pregnancy and medical leave laws that are designed to protect pregnant workers.

## PARTIES

8.      Plaintiff, Sarabeth DeMartino, is a resident of Indian River County, Florida.  She is a former, full-time employee who worked for Defendant from February 1, 2021 until she was terminated on March 1, 2022.

9.      At all times material hereto, Plaintiff was an "employee" and/or "covered employee" of Defendant within the meaning of Title VII and the FMLA because she worked at least 1,250 hours in the 12 months prior to her leave and worked in a location that employed 50 or more employees within a 75-mile radius.

10.      Defendant, Empire Holdings and Investments, LLC, is a foreign limited liability company with its principal place of business located in Palm Beach County, Florida.

11.      Defendant, Juan Carlos Marrero, was Defendant Empire's Regional Business Manager and Plaintiff's direct supervisor, who possessed the authority to take tangible employment actions against Plaintiff.

12.      At all times material times hereto, Defendants were an "employer" and/or "covered employer" within the meaning of Title VII and/or FMLA.

## JURISDICTION AND VENUE

13.     The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. As such, the Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

14.     This Court has supplemental jurisdiction over Plaintiff's claim arising under the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.01-760.11, pursuant to 28 U.S.C. § 1367, as this claim is so related to Plaintiff's Title VII claim that it forms part of the same case or controversy.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

## ADMINISTRATIVE PREREQUISITES

16.     On April 20, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), cross-filed with the Florida Commission on Human Relations ("FCHR"), alleging unlawful pregnancy discrimination in violation Title VII and the FCRA.

17.     On August 15, 2022, Plaintiff was issued a Notice of Right to Sue from the EEOC and timely brings this action within 90 days of the notice.

18.     Pursuant to FCRA § 760.11(8), Plaintiff will seek leave to amend this Complaint to include claims under the FCRA after 180 days have passed without there being a determination by the FCHR on whether reasonable cause exists.

## STATEMENT OF FACTS

### I.    Background

19.    Ms. DeMartino has over a decade of experience working the fitness industry and knows what is expected from employees who work in the industry.

20.    Prior to working for Empire, Plaintiff had worked for Town Sports International ("TSI") for approximately ten years.

21.    TSI was acquired by, and ultimately separated from, Empire Holdings and Investments, LLC in early 2021.

22.    At TSI, Plaintiff began in an entry level position and worked her way up to Regional Business Manager before becoming the General Manager of Christie's Fitness under Defendant Empire's employ.

23.    In February 2021, Ms. DeMartino relocated from New York to Florida to work as the General Manager of Christi's Fitness ("Christie's" or the "Club"), one of several fitness clubs owned and operated by Defendant.

24.    Christie's has certain unique features that distinguish it from Defendant's other facilities, including a recreational and competitive children's gymnastics program that accounts for nearly fifty percent of its membership sales.  It also has a Junior Olympic sized swimming pool in addition to offering traditional fitness memberships.

### II.    Ms. DeMartino Discloses Her Pregnancy

25.    In October 2021, Plaintiff notified Leah Molino, Head of Human Resources, and Anthony Messina, Vice President of Empire Holdings and Investments, LLC, that she was four months pregnant.

26.     Upon notifying Ms. Molino of her pregnancy, Plaintiff inquired about taking FMLA and/or maternity leave.

27.     On October 11, 2021, Plaintiff asked Ms. Molino if Empire had an employee handbook and was told it did not have one.

28.     Also, in October, 2021, Juan Carlos Marrero was promoted to Empire's Regional Business Director and became Plaintiff's direct supervisor.  Initially, Mr. Marrero was nice to Plaintiff and generally supportive of the challenge she faced in making Christie's a profitable fitness club.

29.     On October 14, 2021, Plaintiff told Mr. Marrero that she was pregnant.

30.     After disclosing her pregnancy to Mr. Marrero, Mr. Marrero began picking on Plaintiff and treating her differently than he had before he learned that she was pregnant.

31.     Around the same time, Plaintiff learned that the gymnastics foam pit would need to be closed for construction.

32.     What was supposed to be a weekend renovation resulted in the complete closure of the gymnastics program from November 2021 through February 2022.

33.     Defendant understood that closing the gym would impact Christie's profitability, but that doing so was both necessary and out of Plaintiff's control.

34.     Unfortunately, despite the incredible difficulties the Club was experiencing, Mr. Marrero refused to support Ms. DeMartino and instead focused his attention on newer clubs that were already performing well.

35.     Mr. Marrero told Plaintiff that she was doing the best she could and he was doing everything he could to support her, but Ms. DeMartino learned that Mr. Marrero behind her back

was blaming her for issues that were outside of her control, like the closure of the gymnastics facility that accounted for fifty percent of its membership sales.

36.     Mr. Marrero's visits to Christi's were unannounced – and on the days when he knew that Plaintiff was off the premises – as a means to raise questions about her dedication and work ethic.

37.     It became apparent that Mr. Marrero was trying to find a reason to fire Ms. DeMartino and wanted her to fail.

38.     Ms. DeMartino was so disheartened by Mr. Marrero blaming her for things outside of her control, and for which Empire was fully aware, that, over the next several months, she complained to HR about his mistreatment of her and indifference to Christie's success.

39.     Ms. DeMartino told Ms. Molino that she felt as though Mr. Marrero was picking on her and offering no support to manage the Club's deficiencies while over 50% of its revenue stream was inoperable.

40.     On December 28, 2021, while Ms. DeMartino was out of the Club for a doctor's appointment, she received a text from a coworker telling her that Mr. Marrero was on site and "trying to blame" her for the gymnastics facility's closure.

41.     When Ms. DeMartino arrived at work, Mr. Marrero issued her a Performance Notice for the Club's lackluster production since the foam pit's renovation caused the gym to close entirely.

42.     At this time, Ms. DeMartino was five and a half months pregnant and more noticeable.

43.     In January 2022, Ms. DeMartino tested positive for Covid-19, and her doctor elevated her already high-risk pregnancy to one that was on "extra high alert" due to her age and the ongoing stress she had been experiencing at work.

44.     Mr. Marrero gave Ms. DeMartino a very hard time for needing to take time off work due to her Covid -19 diagnosis.

45.     Mr. Marrero pressured Ms. DeMartino to return to work before she was fully recovered, questioned her about how to obtain quicker test results, and even went so far as to research and send her information regarding testing centers that were able to expedite testing results.

46.     The Club's swimming program was also closed during the fall and winter seasons due to a broken heater, which rendered the swimming pool inoperable and impacted membership sales and revenue for swimming classes that generated a significant portion of Christie's revenue.

47.     Around January 24, 2022, Ms. DeMartino learned that Defendant had published a job posting for her position on Indeed.com.

48.     Ms. DeMartino immediately notified Ms. Molino and Mr. Messina of her discovery, but neither could explain the posting.

49.     Ms. DeMartino specifically told Mr. Messina that she believed Mr. Marrero was trying to replace her because she was about to take maternity leave, and that it may be time for her to hire a lawyer.

50.     In February 2022, after months of unanticipated closures, the gymnastics facility finally reopened.

51.     With the gym now fully operational, Christie's was exceeding its monthly performance goals.

52.     Ms. DeMartino was hopeful that the Club's success would show Mr. Marrero how seriously she took her job and that she was doing everything possible to ensure Christi's was on the path to success.

53.     Nevertheless, he continued to unfairly scrutinize Ms. DeMartino's performance and her hard work.

54.     In late February 2022, due to Ms. DeMartino's "high risk" status, Plaintiff's doctor told her that she would need to visit him twice a week for the remainder of her pregnancy.

55.     Ms. DeMartino's due date was seven weeks away, and she would be out on FMLA leave after she gave birth.

56.     She immediately informed HR and Mr. Marrero of her need for this accommodation.

57.     Mr. Marrero responded. "OK," but his confrontational questions about the estimated duration of her appointments and the distance between her doctor's office and Christie's affirmed his irritation with, and resentment towards, her.

### III.   **Ms. DeMartino is Terminated**

58.     On March 1, 2021, less than two weeks after notifying him of her need for a pregnancy-related accommodation and eight weeks from her due date, Mr. Marrero conferenced Ms. DeMartino into a call with HR and told her they had to let her go for "production" issues.

59.     Given Ms. DeMartino had just completed a successful month with the reopening of the gymnastics facility, she was shocked and lost for words.

60.     As a General Manager and loyal employee for over a decade, Plaintiff knew that employees always received a final performance notice before termination and she never received one.

61.     Due to her impending maternity leave, however, Defendant elected to terminate Plaintiff and immediately fill her position with a male.

**FIRST CAUSE OF ACTION**
**(Pregnancy Discrimination in Violation of Title VII)**
*Empire Holdings and Investments, LLC*

62.     Plaintiff repeats, reiterates, and re-alleges the factual allegations set forth in Paragraphs 1 through 61, as though fully set forth herein.

63.     By the actions described above, among others, Empire Holding & Investments, LLC, discriminated against Plaintiff because of her pregnancy, including by, *inter alia*, terminating her employment.

64.     As direct and proximate result of Empire Holding & Investments, LLC's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, lost wages and benefits and emotional distress, for which she is entitled to an award of monetary damages.

65.     Empire Holding & Investments, LLC's discrimination was intentional, or engaged in with malice and/or with reckless indifference to Plaintiff's rights for which an award of punitive damages will be sought.

66.     Plaintiff also seeks reasonable attorneys' fees and expenses as provided for under Title VII.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of Title VII)**
*Against Empire Holdings and Investments, LCC*

67.     Plaintiff repeats, reiterates, and re-alleges the factual allegations set forth in Paragraphs 1 through 61, as though fully set forth herein.

68.     By the actions described above, among others, Empire Holding & Investments, LLC, retaliated against Plaintiff because of her protected complaints about pregnancy discrimination, including by, *inter alia*, terminating her employment.

69.     As direct and proximate result of Empire Holding & Investments, LLC's, unlawful retaliatory conduct in violation of Title VII and the FCRA, Plaintiff has suffered, and continues to suffer, lost wages and benefits and emotional distress for which she is entitled to an award of monetary damages.

70.     Empire Holding & Investments LLC's discrimination was intentional or engaged in with malice and/or reckless indifference to Plaintiff's rights for which an award of punitive damages will be sought.

71.     Plaintiff also seeks reasonable attorneys' fees and expenses as provided for under Title VII.

### <u>THIRD CAUSE OF ACTION</u>
**(Interference in Violation of the FMLA)**
***Against Empire Holdings and Investments, LLC and Juan Carlos Marrero***

72.     Plaintiff repeats, reiterates, and re-alleges each and every allegation in Paragraphs 1 through 15 and 19 through 61, as though fully set forth herein.

73.     At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA because prior to the birth of her child, she would have worked at least 1,250 hours in any 12-month period.

74.     At all times relevant herein, Empire Holding & Investments, LLC was a "covered employer" within the meaning of the FMLA since it employs 50 or more employees during at least 20 calendar weeks over the covered period within a 75-mile radius of Plaintiff's work location.

75.     At all times relevant herein, Defendant Juan Carlos Marrero was an individual employer under the FMLA because he supervised Plaintiff and had the authority to terminate Plaintiff.

76.     The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).

77.     The Department of Labor is responsible for enacting regulations to carry out the purpose of the FMLA. 29 U.S.C. § 2654.

78.     The Department of Labor's enacting regulations provide that (1) "On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment" 29 C.F.R. § 825.214; and (2) "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions. . . ." 29 C.F.R. § 825.220(c).

79.     In enacting these regulations, the Department of Labor took the position that "[a]lthough section 2615(a)(2) of the Act also may be read to bar retaliation (see *Bryant v. Dollar General Corp*., 538 F.3d 394 (6th Cir. 2008)), the Department believes that section 2615(a)(1) provides a clearer statutory basis for § 825.220(c)'s prohibition of discrimination and retaliation." The Family and Medical Leave Act of 1993, 73 Fed. Reg. at 67,934, 67,986 (Nov. 17, 2008).

80.     By the actions described above, Defendants Empire Holding & Investments, LLC and Juan Carlos Marrero interfered with Plaintiff's rights under the FMLA by using her future FMLA qualifying leave as a negative factor in the decision to terminate her employment.

81.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages, liquidated damages, and reasonable attorneys' fees and expenses.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States;

B.    An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.    An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, an award of back pay and loss of benefits through the date of trial and front pay and future loss of benefits if the equitable remedies of employment, reinstatement and promotion are not feasible;

D.    An award of liquidated damages in an amount to be determined at trial;

E.    An award of punitive damages in an amount to be determined at trial;

F.    Prejudgment interest on all amounts due;

G.    An award of Plaintiff's reasonable attorneys' fees and costs; and

H.    Such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: August 26, 2022

Respectfully submitted,

**MORGAN & MORGAN, P.A.**

By: _____
     Bryan Arbeit, Bar No. 1010329
     Allison Rattet, Bar No. 1023573

8151 Peters Rd, 4th Fl.
Plantation, FL 33324
Tel: (954) 694-9610
barbeit@forthepeople.com

*Attorneys for Plaintiff*