**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION**

SARABETH DEMARTINO,

        Plaintiff,                    CASE NO: 22-cv-14301-CANNON
                                                      JUDGE AILEEN M. CANNON

vs.

EMPIRE HOLDINGS AND
INVESTMENTS, LLC; and JUAN
CARLOS MARRERO,

        Defendants.       /

**PLAINTIFF'S MOTION FOR SANCTIONS PURUSANT TO RULE 37(e)**

Plaintiff, SARABETH DEMARTINO ("Ms. DeMartino" or "Plaintiff"), by and through undersigned counsel, and pursuant to Rule 37(e) of the Federal Rules of Civil Procedure ("Rule 37"), moves this Honorable Court for an Order awarding sanctions against Defendant JUAN CARLOS MARRERO ("Defendant Marrero"), and in support thereof, states:

**PRELIMINARY STATEMENT**

Based on Plaintiff's own experience, Defendant Marrero "would text employees of Christi's on an *ongoing* basis regarding *various matters related to Christi's*, including on *some* occasions Sara DeMartino." Yet, when it came time to produce these text messages in the litigation, the only text messages preserved by Defendant Marrero were those with Plaintiff. Defendant Marrero knew he had an obligation to preserve documents related to Plaintiff's legal claims, but he lost and/or deleted the text messages from two separate iPhones. Plaintiff cannot reasonably obtain the deleted text messages from every other Empire employee, or candidate who applied for the manager position, and it is questionable whether these individuals would have preserved text messages from almost two years ago. Even though Defendant Marrero denies

1

seeking candidates for a manager position at Christi's, at least one candidate who applied for a manager position at Christi's no longer has his text messages with Defendant Marrero. Defendant Marrero's completely implausible explanations for how or why the text messages were deleted from his two iPhones fare no better. As detailed below, sanctions are warranted under Rule 37(e).

## ARGUMENT

Rule 37(e) governs sanctions for spoilation of electronically stored information ("ESI"). To warrant sanctions under Rule 37(e), four threshold conditions must be met: (1) there must have been a duty to preserve ESI; (2) the ESI must have been lost or destroyed; (3) the ESI must have been lost due to the party's failure to take reasonable steps to preserve it; and (4) the ESI must not have been restorable or recoverable through additional discovery. *See Burns v. Medtronic, Inc.,* 2017 WL 11633269, at *3 (M.D. Fla. Aug. 9, 2017); *Akkasha v. Bloomingdales, Inc.*, 2019 WL 11215918, at *4 (S.D. Fla. Oct. 18, 2019); *Sosa v. Carnival Corp.,* 2018 WL 6335178, at *10 (S.D. Fla. Dec. 4, 2018). If the four conditions are met, "a court may only award sanctions under subsection (e)(1) if it finds 'prejudice' to another party, or under subsection (e)(2) if it finds that the spoliating party acted with the 'intent to deprive' the opposing side of ESI." *Doe v. Willis*, 2023 WL 2918507, at *5 (M.D. Fla. April 12, 2023) (quoting Rule 37(e)); *Akkasha*, 2019 WL 11215918, at *4. As discussed below, because Plaintiff can establish each of the four elements, sanctions are warranted for Defendant Marrero's intentional deletion of text messages relevant to this action.

### A.    Defendant Marrero Admits He Was Under a Duty to Preserve Text Messages

Defendant Marrero knew he had a duty to preserve documents related to this action, including the text messages at issue here, at the time they were deleted. His written discovery responses and sworn deposition testimony confirm the same. *See* Relevant Excerpts from

Response to First Request for Admission to Defendant Juan Carlos Marrero, attached as **Exhibit ("Ex.") A**, at No. 1; *see also* Relevant Excerpts from Deposition of Juan Carlos Marrero ("Marrero Dep. II"), September 14, 2023, attached as **Ex. B**, at 35:23-25 (testifying that he knew not to delete text messages). Thus, Defendant Marrero was unquestionably aware of his duty to preserve the text messages from his employment with Empire.

### B. Defendant Marrero *Both* Lost and Destroyed Text Messages He Sent and Received During his Employment with Empire

The second element—that ESI was lost or destroyed—is also met. Here, Defendant Marrero used two iPhones (an old iPhone and a new iPhone) that contained text messages he sent and received during the relevant time period. Exactly when Defendant Marrero purchased a new iPhone is subject to inconsistent evidence but, at his deposition on June 12, 2023, Defendant Marrero testified that he bought a new phone in the "the beginning of year," referring to the beginning of 2023. *See* Relevant Excerpts from Deposition of Juan Carlos Marrero ("Marrero Dep."), June 12, 2023, attached as **Ex. C**, at 265:11-12. Thereafter, Defendant Marrero produced a Verizon contract showing that he last purchased an iPhone on December 24, 2021. While one would think that Defendant Marrero should be able to remember whether he got a new phone in the beginning of 2023 (six months prior) versus the end of 2021 (eighteen months prior), this inconsistency remains unexplained.

Even assuming the new iPhone was purchased at the end of 2021, as the Verizon contract shows, Defendant Marrero testified that he transferred everything from his old iPhone to his new iPhone, including text messages he sent and received during his employment at Empire. *See* Marrero Dep. at 265:11-12; Marrero Dep. II at 33:10-17. Defendant Marrero lost and/or deleted text messages since they were no longer accessible on his new iPhone. Marrero Dep. II at 33:18-21. As for his old iPhone, Defendant Marrero testified that he wiped the device. Marrero Dep. II

at 36:12-19. Thus, Defendant Marrero lost or deleted the text messages on both his old iPhone and new iPhone despite knowing he had an obligation to preserve his text messages. The implausible explanation for these actions is discussed *infra*.

### C. Mr. Marrero Failed to Preserve His Text Messages

The third element examines whether the offending party failed to take reasonable steps to preserve his text messages. The advisory committee notes to Rule 37 explain that reasonable efforts do "not call for perfection," and instruct that a "court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation." *Doe*, 2023 WL 2918507, at *7 (citing Advisory Notes).

Here, Defendant Marrero's testimony about his search for responsive text messages is both troubling and misleading. While Defendant Marrero may not be a sophisticated litigant, he was fully aware of his obligation to preserve his text messages. *See* Marrero Dep. II at 35:23-25. During his deposition, Defendant Marrero admitted that he did not check his text messages for responsive documents in connection with this litigation. Marrero Dep. at 265:2-10. Specifically, Defendant Marrero testified, "No, I did not check my text messages, no. I have a new phone. I don't have, like, things that I can go back track through text messages or anything like that. So, I don't have records on my phone." Marrero Dep. at 265:7-10. He further testified that he made no attempt to search his computer to look for text messages once he was named a defendant in this action. Marrero Dep. at 265:21-24. And worse, Plaintiff was not alerted to the fact that Defendant Marrero had lost or deleted his text messages until Plaintiff's counsel learned about the missing documents during his deposition.

4

To mitigate against deleting the text messages, Defendant Marrero testified that he took screen shots based on instructions given by his counsel and that he believed he did not miss anything "because my lawyers filtered everting out and they looked through everything, and we had many, many conversations about this for – for several times." Marrero Dep. II at 15-22. Thus, Defendant Marrero had the text messages at a point when he knew he was implicated in this litigation and had a duty to preserve documents. However, when questioned about the attorney with whom he allegedly reviewed his text messages, Defendant Marrero's incompatible testimony only furthered Plaintiff's suspicion. Specifically, Defendant Marrero testified that he reviewed the text messages with his attorney, Ranjiv Sondhi, to make sure "we had everything." Marrero Dep. II at 36:3-5. However, Mr. Sondhi was not the first lawyer assigned to the case and only entered his appearance on November 4, 2022, well *after* the action was filed. Marrero Dep. II at 33:21-23. Thus, Defendant Marrero's testimony about reviewing the text messages with his current counsel either cannot be true or is inconsistent with his other testimony about not reviewing the text messages in connection with this litigation.

Moreover, some of the text messages that Defendant Marrero claimed he preserved no longer exist. Defendant Marrero testified that he saved over 100 pages (screenshots) of text messages, only 64 of which were text messages with Ms. DeMartino. Marrero Dep. II at 34:5-19. Defendants ultimately produced the 64 pages of text messages with Ms. DeMartino, on **August 14, 2023**—two months after Defendant Marrero's deposition and nearly *eleven months* into the litigation. Worse, the other 36 (or more) pages of text messages with individuals other than Plaintiff have not been produced and purportedly no longer exist.

Even assuming Defendant Marrero reviewed his text messages at one point, Defendant Marrero did not review them in connection with Plaintiff's First Requests for Production of

5

Documents, served on December 9, 2022. It would, therefore, be impossible for Defendant Marrero or his attorney to be able to search for all text messages responsive to the requests. *Ahrens Enters., Inc. v. Winning*, 2019 WL 12520080, at *4 (S.D. Fla. Apr. 18, 2019) (finding that a party did not meet his reasonable preservation obligations where he deleted emails prior to a forensic review because "[it] was not for [him] to unilaterally decide what might or might not be relevant"); *Paisley Park Enter., Inc. v. Boxill*, 330 F.R.D. 226, 235 (D. Minn. 2019) ("[T]he [defendants] do not get to select what evidence they want to produce, or from what sources. They must produce all responsive documents or seek relief from the court.") (citing Fed. R. Civ. P. 26(c)). And, given that the only text messages produced were those between Defendant Marrero and Ms. DeMartino, one can assume that Mr. Marrero was only instructed to provide his text messages with Ms. DeMartino.

The obvious deficiencies in Defendant Marrero's collection and retention efforts are supported by his own admissions. Notably, Defendant Marrero claimed he "preserved all of [his] text messages related to Sara DeMartino before acquiring a new phone in the beginning of 2022." *See* **Ex. A**, Response No. 2. But Defendant Marrero also asserted that, during his employment, he "would text employees of Christi's on an ***ongoing*** basis regarding ***various matters related to Christi's***, including on ***some*** occasions Sara DeMartino." *Id.* at Nos. 3 and 4 (emphasis added). Therefore, Defendant Marrero essentially admits that he did not review and preserve all his text messages related to Christi's that may be responsive to Plaintiff's document requests, including text messages with other Empire employees about the club's performance or with potential candidates for the Manager position at Christi's during Plaintiff's employment. Thus, Defendant Marrero failed to preserve all potentially relevant text messages before they were lost or deleted.

### D. All of Defendant Marrero's Potentially Relevant Text Messages Cannot Be Retrieved from Another Source

As mentioned above, the only text messages preserved by Defendant Marrero were those with Plaintiff, which she also has, and produced, in this litigation. Empire has not produced a single text message between Defendant Marrero and any other employee of Empire. Defendant Marrero also claims he does not have any backup that would enable him to recover the missing text messages. *See* Relevant Excerpts from Defendant's Objections and Responses to Plaintiff's Second Requests for Production, attached as **Ex. D**, at No. 8. And, theoretically, even if Plaintiff were able to identify the potential universe of people with whom Defendant Marrero may have communicated, via text message, about issues relevant to this case, Plaintiff cannot possibly subpoena text messages from every employee of Empire, or applicant for the Manager position, and it is also doubtful that all of individuals still have their text messages. Plaintiff only recently learned that an applicant interviewed by Defendant Marrero remembers texting with him about the position, but that applicant no longer has those text messages. *See* Declaration of Kyle Burney, attached as **Ex. E**, at ¶ 12. Plaintiff has no idea how many other candidates Defendant Marrero texted, and as discussed *infra*, Plaintiff was only provided a full list of the candidates at the end of discovery.

Based on the above, Defendant Marrero is the most viable source through which relevant text messages could be produced in the litigation. This is sufficient to meet the third threshold element. *See Living Color*, 2016 WL 1105297, at *5 (finding that even where the "great majority" of missing text messages were provided by another party and therefore were not "lost," it was appropriate to continue the Rule 37(e) analysis since "it appear[ed] that at least some of the text messages at issue were not replaced"); *Laub v. Horbaczewski*, 2020 WL 9066078, at *4 (C.D. Cal. July 22, 2020) (agreeing with the defendants that the plaintiff's "destruction of his iPhone, without

7

first backing up the information on it, likely resulted in the loss of ESI—namely, text conversations between [the p]laintiff ... and third parties—and [that] those conversations cannot now be restored or replaced") (citation omitted); *In re Skanska*, 340 F.R.D. 180, 187 (N.D. Fla. 2021) ("At best, [the defendant] can merely represent that *some* of the text messages ... were produced from other custodians. Thus, 'it will never be known whether such information would or would not have been cumulative because it is impossible to know what it was or to whom it may have been communicated.'") (quoting *Paisley Park*, 330 F.R.D. at 235).

Because Defendant Marrero took no affirmative steps to attempt to preserve his text messages, Plaintiff has arranged for a forensic data recovery company to attempt to recover the deleted text messages once stored on Defendant Marrero's new iPhone.[1] In the event Defendant Marrero's texts can be recovered, Plaintiff will update the Court accordingly.

### E.  In Addition to Prejudice, the Record Supports that Defendant Marrero Acted with the Intent to Deprive

After the four threshold requirements for sanctions are met, "the Court must analyze the facts at hand under subsection (e)(1) if there is a finding of 'prejudice' or under subsection (e)(2) if there is a finding of 'intent to deprive.'" *Keim v. ADF Midatlantic, LLC*, No. 12-CV-80577, 2016 WL 7048835, at *6 (S.D. Fla. Dec. 5, 2016). The two subsections of Rule 37(e) operate independently, and a finding that there was an intent to deprive does not require a finding of prejudice. *See* Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment (noting that Rule 37(e)(2) "does not include a requirement that the court find prejudice to the party deprived of the information"); *Tripp v. Walmart, Inc.*, 2023 WL 399764, at *8 (M.D. Fla. Jan. 25, 2023)

---

[1] Since data from an iPhone cannot be restored after it is wiped through a factory reset, the text messages that existed on Defendant Marrero's old iPhone are permanently deleted and cannot be recovered.

8

("Rule 37(e)(2) applies regardless of whether [a c]ourt finds prejudice[.]") (citing Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment); *Nationwide Life Ins. Co. v. Betzer*, 2019 WL 5700288, at *10 (M.D. Fla. Oct. 28, 2019) (commenting that a finding of prejudice is not necessary for a finding of an intent to deprive); *O'Berry v. Turner*, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016) (stating that subsection (e)(2) is not predicated upon "a finding that the opposing party was prejudiced by the failure to preserve [ESI]" and that "[p]rejudice is inferred by [a] court's finding of intent"). Because there is an ample basis for the Court to find Defendant Marrero acted with intent to deprive, Plaintiff begins her analysis, there.

1. **Intent to Deprive**

Defendant Marrero's intent to deprive Plaintiff of relevant documents manifests through his incongruent explanations related to the missing text messages and a broader pattern of either not producing documents that exist (based on witness testimony), or partially producing documents responsive to Plaintiff's document requests.

a. **The iCloud Storage Explanation for the New iPhone**

As to the loss of text messages on his new iPhone, Mr. Marrero testified that he transferred everything from his old iPhone to his new iPhone at the time he purchased his new iPhone. Marrero Dep. II at 33:10-17. However, Mr. Marrero also testified that he no longer had text messages with Ms. DeMartino and other relevant employees of Empire. Marrero Dep. II at 33:18-21. When asked what happened to the text messages, Defendant Marrero responded that "[f]or some reason my new phone, my ICloud, ICloud storage is full." Marrero Dep. II at 33:25-34:1. But Defendant Marrero's full iCloud storage would have no impact on and certainly would not delete, the text messages saved on the iPhone memory, and about which Defendant Marrero testified were transferred when he purchased the new iPhone (Defendant Marrero did not claim

his iPhone storage was full). Since Defendant Marrero offered an implausible explanation for the deletion of the text messages on his new iPhone, it is more likely than not that he was not truthful about what caused the deletion in order to cover up his intentional act of deleting the text messages.

### b.  Wiped Old iPhone to Upgrade a Friend's Phone

Defendant Marrero's story on his admitted deletion of the text message on his old iPhone is similarly implausible. Defendant Marrero testified that he wiped his old iPhone because he wanted to give it to a friend to upgrade her phone. Marrero Dep. II at 36:12-19. Defendant Marrero then testified that, after handing his old iPhone to his friend, she immediately gave it back to him because the camera did not work. Marrero Dep. II at 36:25-37:3. This testimony is remarkable for two reasons. First, Defendant Marrero would not have provided the iPhone to a friend as an "upgrade" if the camera was not functioning. Second, and more concerning, Defendant Marrero testified that his friend was *immediately* able to determine that the camera was not working before she even set up the iPhone. Marrero Dep. II at 37:6-24. But, a person cannot access the camera function on iPhone, or any other function or application, until after the iPhone is set up (if the phone was wiped, it would be like a new phone).[2] Thus, Defendant Marrero's explanation for wiping the text messages on his old iPhone makes no sense and further supports that Defendant Marrero was really trying to hide his text messages on the old and new iPhones in order to deprive Plaintiff of evidence material to the litigation.

### c.  Broader Pattern of Missing or Partially Produced Documents

Defendant Marrero's deletion of his text messages is part of a broader pattern of either not producing documents testified to exist or partially producing relevant documents. As noted above,

---

[2]  Defendant Marrero still has possession of his old iPhone and Plaintiff intends to have Defendant Marrero bring the old iPhone to trial to demonstrate the impossible nature of the explanation.

there are more than 36 pages of text messages that Defendant Marrero testified to having, but that no longer exist. Neither Defendant Marrero nor Empire have produced Defendant Marrero's contract with Empire, about which multiple witnesses testified. *See* Relevant Excerpts from Deposition of Anthony Messina ("Messina Dep."), June 2, 2023, attached as **Ex. F**, at 224:22-225:6 (former Vice President testifying that Defendant Marrero signed contract with Empire); Marrero Dep. at 55:22-56:2. There is also no record of Defendant Marrero transmitting a final performance warning to Empire that he claims should exist, including possibly in his text messages. *See* Marrero Dep. at 255:14-22, 260:18-24, 261:25-262:12, 263:7-13, 264:11-265:10.

The deletion of text messages also appears to be part of Defendants' attempt to hide the fact that Defendants were actively searching for Plaintiff's replacement during her employment and were untruthful to her about doing so. Plaintiff requested all job posting and related documents in her document requests. *See* Relevant Excerpts from Defendants' Objections and Responses to Plaintiff's First Requests for Production, attached as **Ex. G**, at Nos. 13 and 14. Defendants agreed to produce responsive documents during the relevant period. However, Defendants did not produce any documents related to the Manager position posted during Plaintiff's employment, instead producing only a screenshot of the position. Only after discovering that Defendants had used the wrong date for an ESI search of emails that resulted in an extension of discovery (*see* D.E. 54), did Plaintiff receive emails about candidates who applied for the position. Even then, Plaintiff received information for only 13 of the 27 applicants. At the supplemental deposition of Leah Molino, Plaintiff also learned that Ms. Molino believed she provided a list of candidates for the Manager position to her first attorneys. *See* Relevant Excerpts from Deposition of Leah Molino ("Molino Dep."), September 13, 2023, attached as **Ex. H**, at 25:3-15. While after the deposition Ms. Molino took a screenshot of the list of candidates from Indeed, Defendants have not provided

an explanation for why the list of candidates (either previously produced or readily accessible) was not produced.

And most relevant to the spoilation of text messages, Defendant Marrero at his supplemental deposition *denied* that he was interviewing candidates for a Manager position at Christi's and claimed that the posting was part of a general effort to look for talent even if a specific position did not exist. Marrero Dep. II at 12:12-13:24. But Plaintiff was able to obtain a declaration and documents from one candidate showing that the position was specifically for Christi's. *See* **Ex. E**, at ¶¶ 4, 7-10. This candidate also remembers texting with Mr. Marrero about the Manager position but cannot locate those text messages. *Id.* at ¶ 12. And, of course, Defendant Marrero cannot produce the text messages since he deleted them.

The above evidence strongly supports that Defendant Marrero's deletion of his text messages was no accident, but rather, was intentional conduct designed to deprive Plaintiff from obtaining relevant information that would contradict Defendant Marrero's testimony.

### 2. Prejudice

"It is well accepted that discerning what ESI has been lost and the possible probative value of that information can be quite challenging. As a result, neither party is automatically tasked with the burden of proof on the issue of prejudice under Rule 37(e)(1)." *Doe*, 2023 WL 2918507, at *11. Thus, Rule 37 affords the Court "discretion to determine how best to assess prejudice in particular cases." *Id.* This approach reflects a recognition that "[t]ypically, only the spoliator knows how much prejudice has been caused by the destruction." *Doe*, 2023 WL 2918507, at *11 (quoting *Nationwide*, 2019 WL 5700288, at *10 (citation omitted).

Here, Defendant Marrero started supervising Plaintiff days after she disclosed that she was pregnant and was a decisionmaker in the termination decision. Defendant Marrero would therefore

12

be the individual most likely to have documents relevant to the claims and defenses in this action. The fact that Defendant Marrero admits he did not have those text messages, and did not review them in connection with Plaintiff's Document Requests, necessarily prejudiced Plaintiff from obtaining evidence that could reasonably have been expected to support her claims or contradict the defenses, or both. Moreover, preserving only the text messages with Plaintiff is insufficient for communications with others about Plaintiff, or the relevant topics identified in Plaintiff's document requests, about which Defendant Marrero admitted to texting others on an ongoing basis. *See* generally, **Exs. D** and **G** (document requests); **Ex. A** (admissions). As mentioned above, there is at least one candidate that Defendant Marrero contacted about a manager position at Christi's during Plaintiff's employment and there are probably numerous others. Thus, in addition to showing an intent to deprive, Plaintiff was also prejudiced by Defendant Marrero's conduct.

### F. Sanctions Requested

If the Court determines that Plaintiff satisfied only the prejudice element in subsection (e)(1), Plaintiff requests that she be permitted to present evidence regarding the missing text messages at trial, which would allow the jury to "consider the loss of that evidence, and the circumstances under which it was lost, in evaluating witness credibility and making other factual determinations." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc., et al.*, 337 F.R.D. 47, 68-69 (S.D.N.Y. 2020).[3] Importantly, granting Plaintiff the right to present such evidence would

---

[3] *See, e.g., Wilson v. HH Savannah, LLC*, No. CV420-217, 2022 WL 3273714, at *2 (S.D. Ga. July 28, 2022) ("The Court agrees that the appropriate sanction in this case is to "allow[ ] the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision."); *Manning v. Safelite Fulfillment, Inc.*, 2021 WL 3557582, at *10 (D.N.J. Apr. 29, 2021) ("The Court concludes that the appropriate sanction here is to permit defendants to present evidence to the jury regarding [the] deletion[.]"); *Karsch v. Blink Health Ltd.,* 2019 WL 2708125, at *27 (S.D.N.Y. June 20, 2019) ("As an additional sanction, defendants will be permitted to present evidence to the jury concerning [the spoliation], and the jury will be permitted

"ensure that the [jury would] have the full context for the [potential] evidentiary imbalance that [may] become apparent at trial, which is itself relevant evidence going to the parties' credibility and other factual issues." *Id.* Plaintiff also requests that the Court give a jury instruction to "assist in its evaluation of such evidence or argument." Advisory Notes to Rule 37 ("In an appropriate case, it may be that serious measures are necessary to cure prejudice found by the court, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies.").

If the Court determines there was an intent to deprive, Plaintiff requests an adverse inference instruction requiring the jury to infer that the information lost was unfavorable to Defendants, in addition to presenting the evidence to the jury. The record is also replete with Defendant Marrero's implausible explanations regarding the missing text messages, which Plaintiff submits should warrant such an instruction.

## CONCLUSION

Plaintiff respectfully requests that this Court grant her motions for sanctions pursuant to Rule 37(e) and any other such further relief as this Court deems just and proper under the circumstances.

## RULE 7.1(a) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), counsel for the movant has conferred with Defendants'

---

to consider that evidence[.]"); *Franklin v. Howard Brown Health Ctr.*, 2018 WL 4784668, at *7 (N.D. Ill. Oct. 4, 2018) ("it is recommended that parties be allowed to present evidence and argument to the jury regarding the defendant's destruction/failure to preserve electronic evidence in this case[.]").

14

counsel in a good faith effort to resolve the issues raised in the motion and Defendants oppose the requested relief.

Dated: October 11, 2023          Respectfully Submitted,

_____
**Bryan Arbeit, Esq.**
Florida Bar No. 1010329
Telephone: (954) 694-9610
Facsimile: (954) 694-9695)
Email: barbeit@forthepeople.com
**Allison M. Rattet, Esq.**
Florida Bar No. 1023573
Telephone: (954) 807-7774
Facsimile: (954) 807-7797
Email: arattet@forthepeople.com
**Morgan & Morgan, P.A.**
8151 Peters Road, 4th Floor
Plantation, FL 33324
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of October 2023, a true and correct copy of the foregoing has been served via the Court's CM/ECF system, which counsel understands will transmit copies to counsel of record.

_____
**Bryan Arbeit, Esq.**
Florida Bar No. 1010329