UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-14301-Cannon/McCabe

SARABETH DEMARTINO,

    Plaintiff,

v.

EMPIRE HOLDINGS AND INVESTMENTS, LLC
and JUAN CARLOS MARRERO,

    Defendants.
_____/

**REPORT & RECOMMENDATION**

THIS CAUSE comes before the Court on Defendants' Motion for Summary Judgment ("Motion") (DE 64), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 85). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion should be **GRANTED** as to Counts 3 and 4, but **DENIED** as to Counts 1, 2, and 5.

**I.   OVERVIEW**

This is a pregnancy discrimination case. Defendant Empire Holdings and Investments, LLC ("Empire") operated a gym in Vero Beach, Florida that previously employed Plaintiff as its General Manager. In or around 2021, Plaintiff became pregnant and requested maternity leave. Several months later, Empire and its Florida manager, Defendant Juan Carlos Marrero, terminated Plaintiff from her position. Plaintiff maintains Defendants terminated her due to her pregnancy and request for maternity leave. Defendants maintain they terminated her due to poor job performance.

The Amended Complaint alleges five counts as follows:

**Count 1:** Pregnancy Discrimination against Empire pursuant to Title VII of the Civil Rights Act ("Title VII") (DE 27 ¶¶ 62-66)

**Count 2:** Pregnancy Discrimination against Empire pursuant to the Florida Civil Rights Act ("FCRA") (DE 27 ¶¶ 67-71)

**Count 3:** Retaliation against Empire pursuant to Title VII (DE 27 ¶¶ 72-76)

**Count 4:** Retaliation against Empire pursuant to FCRA (DE 27 ¶¶ 77-81)

**Count 5:** Interference against Empire and Marrero in violation of the Family Medical Leave Act ("FMLA") (DE 27 ¶¶ 82-91)

By way of this Motion, Defendants move for summary judgment on all counts pursuant to Fed. R. Civ. P. 56(a).

## II.     SUMMARY JUDGMENT STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." A non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-

moving party." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (cleaned up).  In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party.  *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

### III.   **FACTS**

The record shows the following facts.  Where appropriate, the Court has noted facts that remain in dispute.

#### Background

1. Empire owns and operates multiple luxury fitness clubs including one in Vero Beach, Florida known as Christi's Fitness (the "Club") (DE 84 ¶ 1).

2. Plaintiff worked as the Club's General Manager from February 15, 2021 until she was terminated on March 1, 2022 (DE 84 ¶¶ 2, 62).

3. As General Manager, Plaintiff's job duties included driving revenue at the Club through effective sales as well as recruiting, hiring, and managing the Club's personnel (DE 84 ¶ 4).

4. Defendant Marrero served as Empire's Regional Business Manager with responsibility over the Florida market, including the Club in Vero Beach (DE 84 ¶¶ 16, 18).

5. Leah Molino served as Empire's Director of Human Resources at all relevant times (DE 69 at 596, DE 84 ¶ 6).

#### Pregnancy Disclosure

6. In September or October 2021, Plaintiff disclosed to HR Director Molino that she had become pregnant, and Plaintiff requested three months of maternity leave to begin upon her due date of early May 2022 (DE 84 ¶¶ 6, 66; DE 67 at 90, 149-150; DE 68 at 229).

7. On October 14, 2021, Plaintiff likewise disclosed her pregnancy to Marrero, her immediate supervisor, during an in-person meeting at the Club (DE 84 ¶¶ 6, 18-19). Plaintiff also informed Marrero about her request for maternity leave (DE 84 ¶ 70).

### First Performance Notice

8. On December 28, 2021, Marrero visited the Club unannounced while Plaintiff was at a pregnancy-related doctor's appointment (DE 84 ¶ 38). Plaintiff maintains she had previously advised Marrero of the doctor's appointment (DE 67 at 135, 137, 310-11). Marrero disputes this and claims he had no knowledge of the appointment (DE 69 at 24, DE 67 at 308).

9. When Plaintiff returned from the doctor's appointment, Marrero gave her a written Performance Notice ("First Notice"), meant to "document and communicate that job/company standards [were] not being met" (DE 84 ¶ 48, DE 67 at 271-72). The First Notice warned that "[o]ngoing failure to meet job/company standards can result in further discipline or termination" (DE 67 at 271).

10. The First Notice identified the standard not being met as "not achieving membership, personal training, & ancillary services goals that impact November's financials" (DE 67 at 271). During November, however, Marrero had also sent Plaintiff a text message stating: "Keep up your momentum with sales. Looking solid this month." (DE 84 ¶ 47, DE 69 at 100).

11. Following the in-person meeting to review the First Notice, on December 29, 2021, Marrero sent an email to HR Director Molino, reporting that he made an unannounced visit to the Club, in part, to review the First Notice with Plaintiff based on the poor November financials (DE 84 ¶¶ 39, 53; DE 67 at 308-09). Marrero reported that Plaintiff was not at the Club upon his arrival due to a doctor's appointment, about which he was "never previously informed" (DE 67 at 308).

12. Marrero concluded the email by stating, "Overall, I feel that [Plaintiff] is not able to be a General Manager at this time based on not taking action on her productivity, holding

4

interviews, especially when she is losing her top producer trainer, and taking initiative" (DE 84 ¶ 53, DE 67 at 309).

### Manager Job Postings

13. Defendants deny that they began to search for job candidates to replace Plaintiff's position at any time before terminating her on March 1, 2022 (DE 64 at 18-20, DE 82 at 7).

14. Nevertheless, on December 20, 2021, HR Director Molino emailed Marrero to advise of an applicant who had applied for a Personal Trainer position (DE 76-23 at 2). HR Director Molino stated that the applicant might be worth interviewing for a "management" position, but that if Marrero was not interested, then she would pass the applicant along to Plaintiff for a position as a Personal Trainer or Lead Trainer (DE 76-23 at 2). Marrero responded, advising that the applicant was a "strong candidate for management" and Marrero would be meeting with him during the first week of January in the Vero Beach area (DE 76-23 at 2).

15. On January 10, 2022, Empire also posted a job opening on Indeed.com for a "Manager" position in Vero Beach (DE 84 ¶ 109, DE 76-9). HR Director Molina admitted that she copied the job duties for this job posting from a previous posting she had done for a "General Manager" position (DE 68 at 342). Plaintiff's job title was "General Manager" (DE 84 ¶ 2).

16. On January 19, 2022, HR Director Molino emailed Marrero to advise of a job applicant who had applied for two open positions in Vero Beach, including the new Manager position (DE 76-26). HR Director Molino noted, "Not sending to [Plaintiff] since he also applied for Manager" (DE 76-26 at 2).

17. Later, on January 31, 2022, HR Director Molino emailed Marrero regarding another applicant who had also applied for the open Manager position (DE 76-27 at 2). Marrero responded as follows:

I am meeting with this candidate on Friday, I really like him..

> The rest of the candidates have not responded or done poorly on a phone interview. If you can please make a note..
>
> I would also like to discuss *my plan for Vero Beach* when you have some time this week

(DE 76-27 at 2) (emphasis added).

### The Alleged Complaint about Pregnancy Discrimination

18. On January 24, 2022, following the Indeed.com posting for the open Manager position in Vero Beach, Plaintiff sent a text to Anthony Messina, who worked as Empire's Vice President, and with whom Plaintiff had previously worked at another company (DE 84 ¶ 104, DE 76-14, DE 69 at 182-192). The two exchanged the following text messages:

> **Plaintiff:** I think I'm looking at an ad on indeed for my job. I need someone to level with me
>
> **Messina:** I have no idea what's going on. I'm not part of Florida anymore. It's all [Marrero].
>
> **Plaintiff:** You haven't heard anything?
>
> **Messina:** Not at all but I don't talk to him.
>
> **Plaintiff:** This dude is really coming for [my] job. *I just was out with covid and leaving for maternity soon. Sounds like time to lawyer up.* Smh.
>
> **Messina:** I don't know what's going on over there but doesn't look like he's doing well.

(DE 76-14) (emphasis added).

19. Plaintiff maintains this text constituted a complaint to management about pregnancy discrimination.

### Final Notice

20. The parties dispute what happened next. Marrero maintains that, on February 16, 2022, he called Plaintiff by telephone to review a second Performance Notice ("Final Notice")

6

with her regarding her continued poor performance (DE 69 at 61-68, DE 68 at 623). Marrero maintains that Plaintiff told him, "I'm not signing anything" (DE 69 at 61-68, DE 68 at 623).

21. The record contains a written Final Notice dated February 16, 2022 (DE 67 at 280-81). The Final Notice identifies the standard not being met as "not achieving club's expectations that include sales, hiring, & ancillary services" (DE 67 at 280). The Final Notice bears Marrero's signature, but not Plaintiff's signature, instead indicating "REFUSED TO SIGN" (DE 67 at 280).

22. Plaintiff maintains that Marrero never called her on the telephone to review a Final Notice (though she acknowledges many telephone conversations with Marrero regarding Club performance), that she never received a copy of the Final Notice, and that she never told Marrero that she would refuse to sign a Final Notice (DE 67 at 116-19, DE 76-2 ¶ 9).

### The Termination

23. On March 1, 2022, Marrero and HR Director Molino had a telephone conversation with Plaintiff, during which Empire terminated Plaintiff's employment for continued poor performance (DE 68 at 319, DE 69 at 598 ¶ 15, DE 84 ¶ 62).

24. Marrero made the decision to terminate Plaintiff (DE 68 at 303, 318; DE 69 at 598 ¶ 15; DE 76-29 at 201-02). HR Director Molino supported the decision and participated in the termination phone call (DE 68 at 303, 319; DE 69 at 598 ¶ 15; DE 76-29 at 201-02).

25. In February 2022, the month immediately prior to the termination, Plaintiff hit 101.4% of the Club's sales goal, while Empire's other gyms in Florida achieved only 67.3% and 36.4% of their sales goals, respectively (DE 84 ¶ 96).

26. Thereafter, on May 9, 2022, approximately the same timeframe for which Plaintiff had requested maternity leave, Plaintiff's replacement began working at the Club (DE 68 at 327, 621, 654-55). During the gap between Plaintiff's termination and the replacement's start date,

Marrero covered many of the responsibilities of Plaintiff's former position (DE 67 at 95, DE 68 at 645).

### The EEOC Charge

27.     On April 20, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"), alleging unlawful pregnancy discrimination (DE 76-19, DE 27 ¶ 16).

28.     In responding to the charge, Empire took the position that it terminated Plaintiff due to (1) the loss of revenue caused by Plaintiff's poor performance, and (2) because Plaintiff violated Empire's policies by hiring her own boyfriend to a position that reported directly to her and treating him more favorably than other employees (DE 76-12, DE 76-13). Empire maintained that reason (2) was the "final straw" leading to Plaintiff's termination (DE 76-12 at 6, 7; DE 76-13 at 4, 5).

29.     During discovery of this suit, Marrero and HR Director Molino testified that Plaintiff was terminated due to her performance at the Club, unrelated to the hiring and/or treatment of her boyfriend (DE 69 at 81; DE 68 at 319, 352).

### IV. **DISCUSSION**

Defendants move for summary judgment on all counts of the Amended Complaint (DE 64). The Court will address each argument in turn.

    A.     **Pregnancy Discrimination under Title VII & FCRA (Counts 1 & 2)**

Counts 1 and 2 allege that Empire discriminated against Plaintiff due to her pregnancy in violation of Title VII and the FCRA (DE 24 ¶¶ 62-71). Empire argues summary judgment should be entered in its favor because the undisputed facts show that Empire terminated Plaintiff due to poor job performance, not her pregnancy (DE 64 at 2-20). As set forth below, the Court disagrees and finds that a genuine issue of material fact remains as to Empire's motivation.

Courts construe Title VII and FCRA cases in tandem, following the same analytical framework. *Holland v. Gee*, 677 F.3d 1047, 1054 n.1 (11th Cir. 2012). Title VII prohibits employment discrimination on the basis of sex. 42 U.S.C. § 2000e–2(a). The Pregnancy Discrimination Act amended Title VII to clarify that sex discrimination includes discrimination "on the basis of pregnancy, childbirth or related medical conditions." 42 U.S.C. § 2000e(k). "A plaintiff may prevail on a Title VII claim by showing that her pregnancy was a motivating factor for an employment decision." *Hite v. Hill Dermaceuticals, Inc.*, 619 F. App'x 908, 912 (11th Cir. 2015) (cleaned up). "The analysis for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000).

A Title VII plaintiff can prove unlawful discrimination through direct or circumstantial evidence. *Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000). Direct evidence is "evidence that, if believed, proves the existence of a fact without inference or presumption." *Holland*, 677 F.3d at 1055. "Only the most blatant remarks whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* (cleaned up).

Absent direct evidence, a plaintiff can proceed with circumstantial evidence using two recognized methods. *See Daneshpajouh v. Sage Dental Group of Florida, PLLC*, No. 19-CIV-62700-RAR, 2021 WL 3674655, at *9 (S.D. Fla. Aug. 18, 2021), *aff'd,* 21-13202, 2023 WL 334574 (11th Cir. Jan. 20, 2023) (describing the two methods for showing intent with circumstantial evidence). First, a plaintiff can proceed by way of the "burden shifting framework" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), described by the Eleventh Circuit as follows:

9

> When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated "similarly situated" employees outside her class more favorably. If the plaintiff succeeds in making out a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination.

*Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (cleaned up).

Second, as an alternative to the *McDonnell Douglas* framework, a plaintiff can survive summary judgment by presenting other "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Under this framework, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (cleaned up).

In this case, Plaintiff attempts to proceed by way of this second, "convincing mosaic" method (DE 75 at 3-18). The Court has considered, but finds unpersuasive, Empire's argument that a "convincing mosaic" nevertheless requires a plaintiff to satisfy the elements of a *McDonnell Douglas* prima facie case (DE 82 at 1-10). In Empire's view, Plaintiff cannot satisfy the prima facie elements here (due to a lack of comparators) and thus cannot show a "convincing mosaic" either.

The Court disagrees with Empire's view of the two methodologies and finds they exist as alternatives to one another. Indeed, the Eleventh Circuit has noted that the "convincing mosaic" methodology applies "even if a plaintiff cannot establish a prima facie case of discrimination under the *McDonnell Douglas* framework." *Johnson v. Airbus Def. & Space Inc*, 858 F. App'x 304, 310

(11th Cir. 2021); *see also Tynes v. Florida Dep't of Juvenile Justice*, No. 21-13245, 2023 WL 8593114, at *5 (11th Cir. Dec. 12, 2023) ("A plaintiff who cannot satisfy [*McDonnell Douglas*] framework may still be able to prove her case with what we have sometimes called a 'convincing mosaic' of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.") (cleaned up).

Applying these standards here, the Court finds Plaintiff has presented a convincing mosaic of circumstantial evidence that would allow a jury to conclude that Empire discriminated against her due to her pregnancy. To demonstrate a convincing mosaic, a plaintiff can show, among other facts, "suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred." *Lewis*, 934 F.3d at 1185. Plaintiff presented all three types of circumstantial evidence here, including the following:

- Plaintiff disclosed her pregnancy to Defendants, and requested maternity leave, in September or October 2021 (DE 84 ¶¶ 6, 66; DE 67 at 90, 149-150; DE 68 at 229).

- Approximately two months later, on December 28, 2021, Marrero delivered the First Notice to Plaintiff (DE 67 at 271).

- Marrero delivered the First Notice on the same day Plaintiff had a pregnancy related doctor's visit (DE 84 ¶¶ 38, 48). Plaintiff maintains she had previously advised Marrero of the doctor's appointment (DE 67 at 135, 137, 310-11). Marrero disputes this and claims he had no knowledge of the appointment (DE 69 at 24, DE 67 at 308).

- The First Notice pertained to poor sales numbers for November (DE 67 at 271-72). During the same month, however, Marrero had previously sent Plaintiff a text message stating: "Keep up your momentum with sales. Looking solid this month." (DE 84 ¶ 47, DE 69 at 100).

- A day after delivering the First Notice, Defendant wrote an email to HR Director Molino concluding that [Plaintiff] was "not able" to perform the job of General Manager (DE 84 ¶ 53, DE 67 at 309).

- About ten days later, on January 10, 2022, Empire posted an opening on Indeed.com for a "Manager" position in Vero Beach, Florida (DE 84 ¶ 109, DE 76-9). HR Director Molina admitted that she copied the job duties for this job posting

11

- from a previous posting she had done for a "General Manager" position, which was Plaintiff's job title (DE 68 at 342).

- Despite this, HR Director Molina and Marrero insisted they did not begin to search for Plaintiff's replacement until after they terminated her months later (DE 64 at 18-20; DE 82 at 7; DE 68 at 322-23, 340-42, 645; DE 69 at 115-133, 145).

- Meanwhile, in December and January 2022, HR Director Molina and Marrero began to evaluate candidates for a management position in Vero Beach, appearing to conceal the ongoing search from Plaintiff. As to one resume, HR Director Molino noted, "Not sending to [Plaintiff] since he also applied for Manager" (DE 76-26 at 2). As to another resume, HR Director Molino stated that she would pass along the resume to Plaintiff only if Marrero was not interested in the applicant for management (DE 76-23 at 2).

- Marrero claims he reviewed the Final Notice with Plaintiff by telephone on February 16, 2022 (DE 69 at 61-68, DE 68 at 623). Yet Plaintiff denies this (DE 67 at 116-19, DE 76-2 ¶ 9), and HR Director Molina testified she only saw the Final Notice as part of this litigation and that "only [Marrero] had record of [the Final Notice]" (DE 68 at 296-302, DE 69 at 72).

- Empire terminated Plaintiff on March 1, 2022, allegedly for her performance (DE 68 at 319, DE 69 at 598 ¶ 15, DE 84 ¶ 62). In the month prior to the termination, however, Plaintiff hit 101.4% of the Club's sales goal, while Empire's other two gyms in Florida achieved only 67.3% and 36.4% of their sales goals, respectively (DE 84 ¶ 96).

- Plaintiff's replacement as General Manager began in early May 2022 (DE 68 at 327, 621, 654-55), during the same timeframe Plaintiff was due to give birth and take maternity leave (DE 67 at 149-150, DE 68 at 229).

  - Finally, in responding to the EEOC charge of discrimination, Empire took the position that it terminated Plaintiff for two reasons and that reason (2) was the "final straw" leading to the termination (DE 76-12 at 6, 7; DE 76-13 at 4, 5). During discovery of this case, however, Marrero and HR Director Molino testified that reason (2) played no role in the decision (DE 69 at 81; DE 68 at 319, 352).

Drawing all reasonable inferences in the light most favorable to Plaintiff, the Court finds a reasonable jury could conclude that Empire terminated Plaintiff due to her pregnancy, not her poor performance. The facts include examples of suspicious timing, inconsistent statements made to Plaintiff, and inconsistent statements offered to the EEOC. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1195 (11th Cir. 2004) ("[T]he shifting reasons given by [defendant]

12

allowed the jury to find [its] explanation unworthy of credence, and consequently to infer the real reason was [discrimination]."); *Almond v. City of Canton, Georgia*, No. 105-CV-02748-CAPAJB, 2006 WL 8432780, at *14 (N.D. Ga. Dec. 5, 2006), *R&R adopted*, 2007 WL 9701438 (N.D. Ga. Jan. 18, 2007) (finding inconsistent positions where defendant claimed conduct at Fire Academy was "the last straw" but the evidence in the litigation "indicates that Plaintiff's termination was not a result of Plaintiff's conduct at the fire academy").

To be sure, Empire offers explanations and counter-facts to rebut all of the above circumstantial evidence (DE 64, DE 82). Empire likewise offers many plausible non-discriminatory reasons to support Plaintiff's termination, including the Club's chronically low sales numbers and the fact that Empire fired many *other* non-pregnant managers with similarly low sales numbers, including Marrero himself (DE 64, DE 82). Plaintiff responds with a barrage of rebuttal facts and rebuttal arguments, in an effort to prove Empire's non-discriminatory reasons to be pretextual, including explanations for poor sales numbers, and factual distinctions between Plaintiff and other managers terminated by Empire (DE 75). All in all, the Court finds this case to be rife with factual disputes of all sizes, both big and small. Most importantly, the Court finds a genuine issue of material fact remains as to discriminatory intent. Summary judgment should therefore be denied as to Counts 1 and 2.

B.     **Retaliation under Title VII & FCRA (Counts 3 & 4)**

Counts 3 and 4 allege that Empire retaliated against Plaintiff under Title VII and the FCRA in response to her "protected activity" in the form of a text Plaintiff sent Vice President Messina, allegedly complaining about pregnancy discrimination (DE 27 ¶¶ 73, 78). Empire moves for summary judgment, arguing that the undisputed facts show Plaintiff cannot satisfy the prima facie elements of a retaliation claim as a matter of law. As set forth below, the Court agrees.

13

Like traditional discrimination claims, courts analyze Title VII and FCRA retaliation claims in tandem, using the same analytical framework. *Gonzalez v. Spitzer Autoworld Homestead, Inc.*, No. 22-CV-21590, 2023 WL 3303180, at *14 (S.D. Fla. May 8, 2023). To survive summary judgment, a plaintiff must first establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse action; and (3) "there is some causal relationship between the two events." *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020). "The burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse action." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021) (cleaned up). "Assuming the employer's burden is met, the burden shifts back to the plaintiff to establish that the reason offered by the employer was not the real basis for the decision, but a pretext for retaliation." *Id.*

Here, Plaintiff bases her retaliation claim on a text she sent on January 24, 2022 to Vice President Messina, with whom Plaintiff had worked at a previous company (DE 75 at 20, DE 84 ¶ 104, DE 76-14, DE 69 at 182-192). In that text message, Plaintiff asked Messina about the "Manager" job posting she had just seen on Indeed.com and wrote: "I just was out with covid and leaving for maternity soon. Sounds like time to lawyer up" (DE 76-14).

Plaintiff argues this text constitutes "protected activity" in the form of a complaint about pregnancy discrimination directed to management (DE 75 at 20). In the Court's view, the text can be more accurately characterized as a request for information directed to a mentor. Nevertheless, since the text refers to "maternity leave" and the need to obtain a "lawyer," the Court finds, for purposes of this Motion, that a reasonable jury could interpret the text as a complaint about pregnancy discrimination. The Court therefore finds that Plaintiff satisfies the first and second elements of a prima facie case of retaliation, namely, that Plaintiff engaged in "statutorily protected

14

conduct," and that she suffered an "adverse action" in the form of termination from her employment.

The Court finds, however, that Plaintiff cannot satisfy the third element, i.e., the existence of a causal relationship between the two events. The undisputed facts show Plaintiff fails to establish this element for two reasons. First, to show a causal link between the protected expression and the adverse employment action, a plaintiff must show that "the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Here, the undisputed facts show that the decision maker was Marrero and/or HR Director Molino, not Vice President Messina (DE 76 ¶ 62).[1] Moreover, Plaintiff has not pointed to evidence within the record that gives rise to a reasonable inference that Vice President Messina ever communicated the substance of the text to the actual decision maker(s).

Second, the undisputed facts show Plaintiff did not send the text until *after* Marrero had already made a tentative decision to terminate Plaintiff. Specifically, on December 29, 2021, Marrero wrote an email to HR Director Molino concluding that, "Overall, [Plaintiff] is not able to be a General Manager at this time based on not taking action on her productivity, holding interviews, especially when she is losing her top producer trainer, and taking initiative" (DE 84 ¶ 53, DE 67 at 309). Almost a month after Marrero reached this conclusion, on January 24, 2022, Plaintiff sent the text at issue (DE 76-14). "When an employer makes a tentative decision before protected activity occurs, the fact that an employer proceeds with such a decision is not evidence of causation." *Saffold v. Special Counsel, Inc.*, 147 F. App'x 949, 951 (11th Cir. 2005); *accord*

---

[1] Empire claims Marrero was the sole decisionmaker (DE 65 ¶ 62). Plaintiff disputes this in part and claims HR Director Molino also participated in the decision to terminate Plaintiff (DE 76 ¶ 62). Neither party has asserted that Vice President Messina made the decision.

*Gonzalez v. Spitzer Autoworld Homestead, Inc.*, No. 22-CV-21590, 2023 WL 3303180, at *14 (S.D. Fla. May 8, 2023). For this reason as well, summary judgment should be entered in Empire's favor on Counts 3 and 4 of the Amended Complaint.

### C. Interference under the FMLA (Count 5)

Count 5 alleges that Empire and Marrero interfered with Plaintiff's rights under the FMLA by using her future maternity leave as a negative factor in the decision to terminate her employment (DE 27 ¶ 90). Defendants move for summary judgment, arguing they never denied FMLA leave to Plaintiff and, hence, cannot be liable under the FMLA. As set forth below, the Court disagrees.

The FMLA grants eligible employees the right to take up to 12 weeks of unpaid leave annually for multiple reasons, including serious health conditions that prevent the employee from performing the functions of his or her position. 29 U.S.C. § 2612(a)(1). The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The FMLA likewise provides that it shall be "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). The accompanying regulations clarify that employers may not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions[.]" 29 C.F.R. § 825.220(c).

To enforce these rights, the FMLA authorizes two types of claims: interference claims and retaliation claims. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). To establish an interference claim, a plaintiff must demonstrate that she (1) was entitled to a benefit under the FMLA, (2) was denied that benefit by her employer, and (3) that she was harmed or prejudiced as a result. *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1121 (11th Cir. 2023).

"An employer may be liable for interference despite good intentions; its motives are irrelevant." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 n.2 (11th Cir. 2015) (cleaned up).

To establish a retaliation claim, "an employee must show that his employer intentionally discriminated against him for exercising an FMLA right." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008). "Unlike an interference claim, an employee bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Id.* at 1267–68 (cleaned up).

In this case, Plaintiff labels Count 5 as an "interference" claim, but the underlying factual allegations more closely resemble a "retaliation" claim. That is, the Amended Complaint does not allege that Defendants denied Plaintiff any specific FMLA benefit to which she was entitled. Instead, the Amended Complaint alleges that Defendants used Plaintiff's future maternity leave "as a net negative factor in the decision to terminate her employment" (DE 27 ¶ 90). In the Court's view, these allegations more closely match a retaliation claim, for which proof of discriminatory animus would be required. *Martin*, 543 F.3d at 1267. The Court will therefore regard Count 5 as an FMLA retaliation claim regardless of the "interference" label Plaintiff attached to it. *See, e.g.*, *Scott Equip. Co., Inc. v. Zurvahn Corp.*, No. 10-60912, 2010 WL 11603172, *2 (S.D. Fla. July 28, 2010) (addressing merits of motion to dismiss despite plaintiff's use of incorrect nomenclature to label the claim).

Courts analyze FMLA retaliation claims under the same framework as Title VII retaliation claims. *Benz v. Crowley Mar. Corp.*, 732 F. App'x 794, 804 (11th Cir. 2018). Absent direct evidence of discriminatory intent, a plaintiff can proceed with circumstantial evidence via the *McDonnell Douglas* burden-shifting framework or via the "convincing mosaic" method. *Id.* In this regard, the Court finds no substantive difference between an intent to discriminate based on pregnancy, as alleged in Counts 1 and 2, and an intent to discriminate based on future maternity

17

leave, as alleged in Count 5. For the reasons previously discussed in section IV.A above, the Court finds the evidence here creates a triable issue, using the "convincing mosaic" methodology, as to whether Defendants intended to discriminate against Plaintiff based on her request for future maternity leave. Accordingly, summary judgement should be denied as to Count 5.

## V. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 64) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Motion should be **GRANTED** as to Counts 3 and 4 of the Amended Complaint.

2. The Motion should be **DENIED** as to Counts 1, 2, and 5 of the Amended Complaint.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 15th day of December 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE