UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-14301-Cannon/McCabe

SARABETH DEMARTINO,

    Plaintiff,

v.

EMPIRE HOLDINGS AND
INVESTMENTS, LLC, and
JUAN CARLOS MARRERO,

    Defendants.
_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Plaintiff's Motion for Sanctions ("Motion") (DE 66), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 70). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **DENIED**.

**I.   OVERVIEW**

This is a pregnancy discrimination case involving a pregnant woman who was fired from her position as General Manager of a gym in Vero Beach. Plaintiff brings the instant Motion, seeking sanctions against her former supervisor, Defendant Marrero, based on his failure to preserve certain text messages from his personal cell phone. Among other sanctions, Plaintiff seeks a jury instruction, pursuant to Fed. R. Civ. P. 37(e), that would allow the jury to assume the lost text messages were unfavorable to Marrero (DE 66 at 13-14). As set forth below, the Court finds no sanctions to be warranted.

## II.     FACTS

The Court held an evidentiary hearing on this Motion on January 18, 2024 (DE 105). During the hearing, the Court heard testimony from Marrero, as well as from Plaintiff's expert, Robert Knudsen, and Defendant's expert, Matthew Deaux. Based upon the evidence adduced at the hearing, the Court makes the following findings of fact: [1]

1.      Defendant Empire Holdings and Investments, LLC ("Empire") owns and operates multiple luxury fitness clubs, including one in Vero Beach (the "Club") (DE 84 ¶ 1).

2.      Plaintiff worked as the Club's General Manager from February 15, 2021, until her termination on March 1, 2022 (DE 84 ¶¶ 2, 62).

3.      Marrero served as Empire's Regional Business Manager with responsibility over the Florida market, including the Club in Vero Beach (DE 84 ¶¶ 16, 18).

4.      During his employment, Marrero sometimes used his personal cell phone for business purposes by sending text messages to Empire employees, including Plaintiff (DE 104 ¶ 9).

5.      Marrero owned two iPhones during the relevant time frame of this case, hereafter referred to as the "Old Phone" and the "New Phone." Marrero utilized the Old Phone up to December 24, 2021, at which point he purchased the New Phone at a Verizon store (DE 104 ¶ 4).

6.      At the time of the purchase, Marrero transferred all the historical text messages from his Old Phone to his New Phone (DE 104 ¶ 5). Marrero thereafter maintained possession of

---

[1] To the extent any findings of fact may constitute conclusions of law, they are adopted as such and vice versa. In making factual findings, the Court cites to documentary evidence admitted during the hearing and relevant portions of the record. These factual findings are also based upon, or supplemented by, the hearing testimony as recalled by the Court. No transcript of the hearing has been filed.

the Old Phone, but did a "factory reset," thereby deleting all historical text messages from that device.

### The Screenshots

7. On or about March 1, 2022, Empire terminated Plaintiff's employment, with Marrero participating in the termination meeting (DE 68 at 319, DE 69 at 598 ¶ 15, DE 84 ¶ 62).

8. Thereafter, on or about April 20, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC Charge"), alleging unlawful pregnancy discrimination (DE 76-19, DE 27 ¶ 16).

9. Once Plaintiff filed the EEOC Charge, Marrero became aware of his duty to preserve evidence related to this case, including the text messages on his personal cell phone (DE 104 ¶ 1).

10. Shortly after the EEOC Charge, in or around April 2022, Marrero received instructions from Empire's lawyers to gather documents. Following those instructions, Marrero made screenshots of all his text messages to or from Plaintiff. Marrero gathered these text messages from his New Phone. Because he had previously transferred the data from his Old Phone to his New Phone, many of the text messages had dates prior to Marrero's purchase of the New Phone.

11. Once Marrero made screenshots of all his text messages to or from Plaintiff, he forwarded those screenshots to Empire's lawyers. During the hearing on this Motion, Marrero introduced these screenshots into evidence as Exhibit A, consisting of 64 pages of text messages spanning from October 14, 2021 to March 1, 2022 (Ex. A).

12. During the hearing, the Court noted that Marrero had gathered text messages *to or from* Plaintiff, but not necessarily text messages to or from third parties *about* Plaintiff. The Court

3

asked Marrero whether he had any text messages in the latter category at the time he made the screenshots in April 2022. He answered no.

### Marrero's Termination

13. Plaintiff filed this lawsuit on August 26, 2022, naming Marrero as a defendant in his individual capacity (DE 1). Marrero continued to work for Empire until his own termination in October 2022 (DE 69 at 141).

14. At some point following his termination, Marrero began to receive messages from Apple on his New Phone, informing him that his iCloud storage was full and offering him the opportunity to purchase more storage for a fee. Marrero declined to purchase more storage.

### Text Message Storage

15. Both experts agreed that historical text messages on an iPhone can be stored in at least two forms. First, historical text messages can be uploaded to iCloud storage. The amount of iCloud storage depends on the amount chosen by the user. Apple offers a certain amount of iCloud storage at no charge and additional amounts in exchange for a fee paid by the user.

16. If a user's iCloud storage reaches capacity, and the user declines to purchase more storage, user data may be deleted. The types of data deleted and the order in which the deletion will occur depends upon the user's iCloud settings.

17. Neither side offered any evidence during the hearing regarding the settings for Marrero's iCloud account.

18. Second, in addition to iCloud, the drive located within an iPhone stores historical text messages. An iPhone will store such messages for various amounts of time depending upon the settings of the cell phone, which can be adjusted according to user preference to auto-delete text messages after a set amount of time.

19. Marrero testified that he never altered any of the default settings on the New Phone. Both experts testified that Apple's default settings will store text messages indefinitely, up to the storage limit of the cell phone drive itself.

20. The Court asked both experts what happens when an iPhone drive becomes full. Will the phone automatically delete old text messages? Both experts agreed that text messages take up very little storage and neither expert had ever seen a situation where an iPhone deleted old text messages due to a lack of device storage.

21. Both experts agreed it is very difficult to retrieve historical text messages from the drive of an iPhone once the messages have been deleted from the device, whether by auto-delete settings, or by individual deletion by the user.

22. Neither expert opined on the viability of obtaining historical text messages from a cell phone carrier such as Verizon.

## Discovery of Missing Text Messages

23. On December 9, 2022, Plaintiff served her First Request for Production of Documents on Marrero (DE 104 ¶ 2). The request included:

> 8. All documents and correspondence related to the decision to terminate Plaintiff including, without limitation, any internal notes or memoranda.
>
> 9. Any documents, communications and/or ESI referencing Plaintiff's termination, including, but not limited to, any communications (text messages, emails, and/or instant messages) between Defendant's employees, officers, and owners.

(DE 66-7).

24. Thereafter, on June 12, 2023, Plaintiff deposed Marrero and asked him numerous questions regarding his text messages (DE 69 at 72-74, 136-148).

25. During the hearing on this Motion, Marrero testified that, at some point following the deposition, he reviewed the historical text messages on the New Phone and noticed that many of his old text messages were gone (DE 104 ¶ 3). Marrero had no idea how or why they disappeared. He claimed he never deleted any of the text messages.

26. At some point, Marrero and/or Empire produced in discovery the same screenshotted text messages that Marrero had gathered back in April 2022 (Ex. A). Marrero did not produce any text messages between himself and anyone else.

**Expert Review of the Phones**

27. Believing Marrero had intentionally deleted his text messages, in or around October 2023, Plaintiff requested that Marrero submit the New Phone for forensic examination. Marrero agreed and sent the New Phone to Plaintiff's Expert Knudson on October 8, 2023.

28. Before mailing the New Phone, Marrero first took it to the Verizon store, together with the Old Phone. Marrero wanted to reactivate the Old Phone, so that he could use it while the New Phone was under expert review. Verizon reactivated the Old Phone and did a "backup" of the New Phone to the Old Phone.

29. Following the backup, Marrero sent the New Phone to Expert Knudson in airplane mode as requested.

30. Expert Knudson received the New Phone but could not unlock the screen, despite numerous attempts (Ex. 2). Expert Knudson contacted Marrero, who cooperated in the effort to unlock the screen, to no avail. As a result, Expert Knudson conducted no forensic examination of the New Phone.

31. Expert Knudson next attempted to review Marrero's iCloud account (Ex. 2). Marrero provided the necessary log-in credentials for this purpose, but Expert Knudson testified the iCloud account contained "no backups" (Ex. 7).

32. Next, Marrero decided to get his own expert opinion from Defense Expert Deaux. Expert Deaux testified that he attempted to access Marrero's iCloud account but could not do so due to "technical difficulties."

33. Expert Deaux also conducted a forensic examination of Marrero's Old Phone which, due to the Verizon backup, contained historical text messages previously stored on the New Phone. Expert Deaux made no examination of the New Phone itself.

34. Expert Deaux testified that he searched the data on the Old Phone using a list of search terms, phone numbers, and date parameters from February 2021 to May 1, 2022, provided by Plaintiff's counsel (Ex. C). The search returned close to 5,800 hits.

35. Expert Deaux testified that the hits consisted of WhatsApp messages. Marrero's counsel later produced to Plaintiff approximately seventeen relevant WhatsApp messages, introduced into evidence during the hearing as Exhibit 10.

36. The search conducted by Expert Deaux carries great significance because it did not return hits for any text messages, even the text messages that Marrero screenshotted back in April 2022. Based on the search parameters, Expert Deaux's search should have returned the screenshotted text messages. Because the search failed to do so, it is fair to assume these text messages were deleted from the drive of one of the phones prior to Expert Deaux's review.

37. Because the screenshotted text messages were deleted, the Court cannot be certain whether *other* text messages might also have been deleted. In particular, if (contrary to Marrero's testimony) he did in fact send text messages to or from third parties *about* Plaintiff and/or her

termination, those text messages would no longer exist on the drive of the phone, having been deleted just like the screenshotted text messages.

## Other Sources

38. Plaintiff did not subpoena Marrero's phone company, Verizon, for responsive text messages during the course of this litigation (DE 104 ¶ 13).

39. Likewise, Plaintiff did not seek discovery of text messages from any third parties, including Empire employees in their individual capacity, by way of nonparty subpoenas or other means (DE 104 ¶ 14).

## III. DISCUSSION

By way of this Motion, Plaintiff seeks sanctions against Marrero for failing to preserve electronically stored information or "ESI," in the form of his historical text messages. When considering a spoliation claim involving ESI, courts look to Fed. R. Civ. P. 37(e), which provides:

> (e) If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

See also Sosa v. Carnival Corp., No. 18-20957-CIV, 2018 WL 6335178, at *16-17 (S.D. Fla. Dec. 4, 2018) (discussing imposition of Rule 37(e) sanctions).

8

As reflected in the language of the rule, four threshold elements must be present for Rule 37(e) to apply: (1) there must have been a duty to preserve ESI; (2) the ESI must have been lost or destroyed; (3) the ESI must have been lost due to a failure to take reasonable steps to preserve it; and (4) the ESI must not have been restorable or recoverable through additional discovery. *Akkasha v. Bloomingdales, Inc.*, No. 17-22376-CIV, 2019 WL 11215918, at *4 (S.D. Fla. Oct. 18, 2019). The party seeking sanctions bears the burden of proof on these four elements. *Sosa*, 2018 WL 6335178, at *16-17. If the movant fails to carry the burden as to any of these four elements, the motion must be denied, and the Court need not address prejudice, "intent to deprive," or appropriate sanctions. *Id.* at *10.

The Court will address each threshold element in turn.

### A.   Duty to Preserve

As to the first element, the parties agree that Marrero had a duty to preserve his text messages from the moment Plaintiff filed her EEOC Charge in April 2022. The Court therefore finds this element satisfied.

### B.   ESI Lost or Destroyed

As to the second element, the Court finds that ESI has been lost or destroyed. Specifically, in April 2022, Marrero made screenshots of numerous text messages *to or from* Plaintiff, but not necessarily text messages to or from third parties *about* Plaintiff and/or her termination. Two expert witnesses attempted to search Marrero's iCloud account for text messages during the relevant time frame, and neither witness had any success in doing so. Likewise, two expert witnesses attempted to conduct forensic examinations of Marrero's phones for text messages during the relevant time, again without success.

9

Indeed, the forensic examination conducted by Defense Expert Deaux confirmed that the Old Phone no longer contains the text messages that Marrero screenshotted back in April 2022. These text messages have been lost, and nothing remains other than the screenshot versions. This means that neither Plaintiff nor the Court can be certain whether Marrero sent or received *other* text messages – which he chose not to screenshot – to or from third parties about Plaintiff and/or her termination.

The Court recognizes that Marrero testified during the hearing that he had no such text messages. The Court finds Marrero's testimony on this point unreliable. Given that Marrero had 64 pages of text messages to or from Plaintiff, the Court is skeptical that he had no text messages to or from third parties about Plaintiff, or text messages that were otherwise responsive to Plaintiff's Request for Production. The ESI necessary to show the existence or non-existence of such text messages has been lost. The Court therefore finds this element satisfied.

### C. Reasonable Steps to Preserve ESI

As to the third element, Rule 37(e) calls for "reasonable steps" in the preservation of ESI, but not "perfection." *See* Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment. The Court finds Marrero failed to take "reasonable steps" for the following reasons.

First, as to the text messages stored on the device itself, the evidence showed that such messages would likely have been deleted in only two ways:

(1) Marrero deleted them himself, or

(2) Marrero altered the auto-delete settings on his phone, thereby causing automatic deletion of the messages.

During the hearing, Marrero denied that either of these possibilities could be true. That is, he denied ever deleting any text messages, and he also denied ever changing the default settings on his phone. If both assertions were true, then Defense Expert Deaux would have found the text

10

messages that Marrero had screenshotted back in April 2022. But Expert Deaux failed to do so, meaning that one or more of Marrero's assertions was not true. Regardless of which assertion was untrue, the result would be the same: Marrero failed to take reasonable steps to preserve the ESI on his phone.

Next, as to iCloud storage, Marrero could likely have preserved his ESI simply by purchasing more storage when prompted to do so in early 2023. At the time Marrero received these prompts, he had already been named as a defendant in this lawsuit in his individual capacity. The Court finds, under the circumstances of this case, that Marrero acted unreasonably by failing to pay the nominal fee required to preserve his ESI. The Court limits this holding to the facts of this case, and this holding should not be interpreted to mean that all parties in all cases violate their Rule 37(e) obligations by failing to purchase additional iCloud storage.

The Court has considered, but finds unpersuasive, Marrero's argument that he fulfilled his preservation obligation by creating the screenshots in April 2022. Marrero chose to screenshot only the text messages *to or from Plaintiff*. In the Court's view, parties cannot meet their Rule 37(e) obligations by selectively preserving evidence based on their own unilateral determinations of relevance. *See Ahrens Enters., Inc. v. Winning*, No. 18-80650-CIV, 2019 WL 12520080, at *4 (S.D. Fla. Apr. 18, 2019) (finding that a party did not meet his reasonable preservation obligations where he deleted emails prior to a forensic review because "[it] was not for [him] to unilaterally decide what might or might not be relevant"). It makes no difference whether Marrero made this decision himself, or whether his counsel directed the decision. *See Doe v. Willis*, No. 8:21-cv-1576, 2023 WL 2918507, at *6 (M.D. Fla. Apr. 12, 2023) (noting that a party and his or her counsel should be treated "as one" for purposes of Rule 37(e)).

The Court has also considered Marrero's relative level of sophistication, as recommended by the Advisory Committee Notes to Rule 37(e). *Id.* at *7. The Court finds Marrero to be an intelligent professional who regularly used cell phone technology as part of his everyday work and personal life, making use of text messaging, emails, and WhatsApp. As a regular user of such technology, Marrero should have taken reasonable steps to preserve the text messages on his phone(s). The Court finds he did not do so.

D.   **ESI Not Restorable or Recoverable**

Finally, as to fourth element, the Advisory Committee Notes to Rule 37(e) recognize that ESI often exists in multiple locations, and that "loss from one source may be harmless when substitute information can be found elsewhere." *See* Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment. Accordingly, Rule 37(e) prohibits sanctions unless the moving party shows that the ESI was not "restorable or recoverable through additional discovery." *Akkasha*, 2019 WL 11215918, at *4.

The Court finds Plaintiff has not met her burden to prove this fourth element for two reasons. First, every text message has both a sender and a recipient. Here, Plaintiff did not seek discovery of text messages from the third parties who reasonably might have communicated with Marrero regarding Plaintiff and/or her termination, by way of nonparty subpoenas to Empire employees in their individual capacities, or by other means (DE 104 ¶ 15).

The Court agrees that parties in litigation need not embark on a widespread fishing expedition for missing ESI. But the record here – as illustrated by Plaintiff's own list of search terms introduced as Exhibit C – showed a very limited universe of logical nonparty subpoena targets. These included three Empire employees with whom Marrero might have communicated regarding Plaintiff and/her termination (Ex. C). The record also contains the names of three job

candidates with whom Marrero might have communicated, allegedly to replace Plaintiff's position as General Manager (DE 76-23, DE 76-26, DE 76-27). Plaintiff did not attempt to obtain text messages from any of these witnesses.

Second, Plaintiff did not attempt to subpoena Marrero's phone company, Verizon, for responsive text messages (DE 104 ¶ 13). *Cf. Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, No. 14–cv–62216, 2016 WL 1105297, at *5 (S.D. Fla. Mar. 22, 2016) (finding fourth element satisfied where plaintiff "already subpoenaed [d]efendant's cell phone provider, and the provider was unable to provide any additional information"); *Keim v. ADF Midatlantic, LLC*, No. 12-CV-80577, 2016 WL 7048835, at * 6 (S.D. Fla. Dec. 5, 2016) (similar).

Plaintiff might have encountered difficulty obtaining the content of text messages from Verizon due to the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq. See Classic Soft Trim, Inc. v. Albert*, No. 618CV1237ORL78GJK, 2020 WL 6749836, at *3 (M.D. Fla. Sept. 21, 2020) (noting that the SCA prevents providers from disclosing the content of electronic communications pursuant to a civil subpoena, absent one of the enumerated statutory exceptions). Even without content, though, a Verizon subpoena might have yielded the dates, times, and senders/receivers of missing text messages. Moreover, had Plaintiff asked Marrero to provide a voluntary consent, and had Marrero done so, a Verizon subpoena might have yielded the missing ESI in full. *See* 18 U.S.C. § 2702(b)(3) (allowing providers to disclose the content of communications "with the lawful consent of the originator or an addressee or intended recipient of such communication"). The Court does not know the answers to these questions because Plaintiff never pursued these avenues.

For all of these reasons, the Court finds Plaintiff cannot satisfy her burden to prove the fourth element, namely, that the ESI was not "restorable or recoverable through additional

13

discovery." *Akkasha*, 2019 WL 11215918, at *4.  Because Plaintiff has not proven one of the four threshold elements under Rule 37(e), the Motion must be denied.

V.      **RECOMMENDATION & NOTICE OF RIGHT TO OBJECT**

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 66) be **DENIED.**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THEY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 26th day of January 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE